Daniel D. Edelman (DE-4700)
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY  10036-6524
Telephone: 212.832.8300
Facsimile: 212.763.7600
E-mail: daniel.edelman@hellerehrman.com

E. Randol Schoenberg (Cal Bar # 155281)
(Pro Hac Vice Application to Be Filed)
BURRIS & SCHOENBERG, LLP
12121 Wilshire Boulevard, Suite 800
Los Angeles, CA  90025
Telephone: 310.442.5559
Facsimile:  310.442.0353
E-mail: randols@bslaw.net

*Attorneys for Plaintiff GEORGES JORISCH*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGES JORISCH, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>LEONARD LAUDER, an individual,<br><br>                              Defendant. | Civil Action No.: 07 CIV 9428<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff GEORGES JORISCH ("Jorisch"), by and through his undersigned attorneys, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for recovery of the painting by Gustav Klimt entitled *Blooming Meadow (1904/05) (W176)*, a reproduction of which is attached hereto as Exhibit "A" (the "Painting"). The Painting belonged to Amalie Redlich ("Amalie"), the grandmother of Jorisch, and was taken from her as a result of Nazi persecution. Amalie was deported in October 1941 from Vienna to the infamous ghetto in Lodz, Poland, and is presumed to have perished in the Holocaust. The Painting was lost and never recovered.

2. The Painting was purchased privately by Defendant LEONARD LAUDER ("Lauder") in 1983 and is believed to have been kept since then in his private home in New York.

3. Jorisch discovered that the Painting was in Lauder's possession in 2002, at which time Jorisch inquired regarding the Painting's provenance to determine whether it was in fact the same painting that belonged to Jorisch's grandmother. Since that time, Jorisch and Lauder have both conducted research to determine the provenance of the Painting.

4. In September 2005, Jorisch submitted the results of his research to the noted Klimt expert Dr. Alfred Weidinger, Deputy Director and Chief Curator of the Austrian Gallery (Belvedere) of Vienna, Austria ("Dr. Weidinger"). In October 2007, Dr. Weidinger published a new catalogue raisonée of Klimt's paintings in which he concluded that the *Blooming Meadow* painting in Lauder's possession was the one owned

by Jorisch's grandmother. (The W numbers referenced in this Complaint indicate the catalogue numbers in Dr. Weidinger's catalogue raisonée.)

5. As a result, Jorisch recently demanded return of the Klimt painting from Lauder, but Lauder ignored the demand and refused to return the Painting. Lauder also would not agree to any form of alternative dispute resolution, necessitating the filing of this suit.

## PARTIES

6. Plaintiff Jorisch is a citizen of Quebec, Canada, residing in Darvol, Canada.

7. Defendant Lauder is a citizen of the State of New York residing in New York City, New York.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action by virtue of the complete diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a)(2). Jorisch is citizen of Canada, a foreign state, and Lauder is a citizen of New York. The amount in controversy exceeds $75,000, exclusive of interest and costs. The Painting is estimated to be worth $10-20 million.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391. The defendant resides in this District and the Painting is also located in this District.

## FACTS

10. Gustav Klimt (1862-1918) was the leading painter of his generation in Vienna, Austria. Among his greatest supporters were the members of the Austrian-Jewish Zuckerkandl family, who purchased a number of his paintings.

11. Jorisch's grandmother was born Amalie Zuckerkandl ("Amalie") in 1868. She was the sister of Emil (1864-1910), Dr. Otto (1861-1921), Victor (1851-1927) and Dr. Robert Zuckerkandl (1856-1926). Amalie married Julius Rudinger in 1893 and had one child, a daughter Mathilde Rudinger ("Mathilde"), born 1894, before divorcing in 1901. Later that year, Amalie married the famous neuropathologist, Dr. Emil Redlich (1866-1930), and thereafter was known as Amalie Redlich.

12. Mathilde married the lawyer Louis Jorisch ("Louis") in May 1927 and had one child, Plaintiff Georges (born "Georg") Jorisch, born May 3, 1928. Around 1932, Louis, Mathilde and Georg moved in with Amalie, living in her villa in the suburb of Purkersdorf outside Vienna, Austria. Around 1934, Louis moved out and in 1936, divorced, leaving Mathilde and Georg with Amalie.

13. In March 1938, Nazi Germany annexed Austria in the famous Anschluss. As Jews, the family faced great persecution by the Nazi regime. Georg remained with his mother Mathilde and grandmother Amalie until the spring of 1939, when his father Louis took him to Belgium, where the two managed to hide, surviving the Nazi round-ups and murder of Jews throughout Europe.

4

14. Amalie and Mathilde remained in Vienna and did not fare as well. They were dispossessed of their property by various Nazi agencies. Forced to live in the laundry room of their former home, they were ultimately deported on October 23, 1941 to the infamous Jewish ghetto in Lodz, Poland. They were never heard from again.

15. After the war, Louis returned to Vienna. On behalf of his son, Louis attempted to recover the property of his mother-in-law, Amalie. In 1947, Louis filed a claim with the Austrian federal monument office stating that he was seeking, among other artworks, three paintings by Gustav Klimt that had belonged to Amalie. One painting he described as a landscape of an Italian village with a church whose tower was not complete – the painting presently known as *Church in Cassone (1913) (W217)*. The other two missing Klimt paintings were described simply as *"Flowery Meadow"* with one being a counterpart to the other.

16. The paintings described in 1947 by Louis were also included in a "search list" of confiscated artworks from Austria that was sent to Germany.

17. Louis and his attorney made inquiries with the various parties involved in the confiscation and storage of Amalie's belongings, but were told (perhaps dubiously) that her possessions had been looted by the Russians after the conclusion of the war.

18. Louis, his lawyer and the Austrian authorities did not manage to locate any of the Klimt paintings or any other artworks from Amalie's collection.

19. Louis died in 1949.

20. In 1957, Jorisch emigrated from Belgium to Montreal, Canada, where he currently resides.

21. In the 1990s, Georges made inquiries to various organizations offering assistance in the recovery of Nazi-looted artworks. None of these agencies were successful in locating or recovering any of the artworks, although evidence was found that the *Church in Cassone* had been in the possession of a Dr. Robinson in Graz, Austria in 1961.

22. In March 2003, Jorisch contacted an attorney, E. Randol Schoenberg ("Schoenberg"), and retained him to assist in locating and recovering artworks from his grandmother's collection. Schoenberg began researching the provenance of all of the Klimt paintings that could be described as "flowery meadow."

23. One such painting, *Blooming Meadow in Litzlberg (1905) (W177)*, was in the possession of the Carnegie Museum in Pittsburgh, Pennsylvania. The painting's provenance demonstrated that it had been brought to the United States by the architect Josef Urban, who moved from Vienna to New York in 1914, and therefore could not have belonged to Amalie Redlich.

24. Another painting, *Poppy Field (1907) (W182)*, had been in the possession of Amalie's nephew Fritz Zuckerkandl ("Fritz") and was recovered by Fritz's son Emile Zuckerkandl after the war from Hans Gnad, the Nazi who had aryanized the Zuckerkandl estate in Purkersdorf where all of the family members lived. Unable to export the Painting, Emile left it with his cousin Hermine Müller-Hofmann (the daughter of Otto

6

and Amalie Zuckerkandl) and sold it in the 1950s to Dr. Rudolf Leopold of Vienna ("Dr. Leopold"). Dr. Leopold later traded the painting to the Austrian Gallery. *Poppy Field* seemed very likely to have been one of the two "flowery meadow" paintings remembered by Louis. It seems possible that the painting, although in Fritz's possession, had not been officially divided up and Louis believed it was still owned in part by Amalie Redlich.

25. A third painting, *Blooming Meadow (1904/05) (W176)*, the painting in question in this case, remained a possible match for one of the two "flowery meadows," but its location was unknown. For example, in the comprehensive 2002 catalogue of Klimt landscapes edited by Stephan Koja and published in connection with a large exhibition at the Austrian Gallery, this *Blooming Meadow* was listed as coming from a "private collection" without even identifying the city. However, in a catalogue edited by Colin Bailey, published in 2001 in connection with an exhibition at the National Gallery in Ottawa, Canada, the same work was identified as coming from a private collection in New York.

26. Beyond those three paintings, the other potential candidates for the missing *Blooming Meadow* were either not called meadows, because they featured some other distinguishing elements, or were owned by different families before the war, and therefore could not have been in Amalie's possession.

27. For example, the painting *Farmhouse with Birch Trees (1900) (W142)* features a vast blooming meadow with just several thin birch trees. The painting,

7

however, had been confiscated by the Nazi authorities from the Lasus-Danilowatz family, to whom it was returned by the Austrian Gallery in 2001.

28. The painting *Fruit Trees (1901) (W149)* has a meadow but is dominated by the trees. The painting had been owned by Sonia Knips before WWII.

29. The painting *Farm Garden (1907) (W183)* is a bit too flowery to be called a meadow. In any case, it was purchased in 1910 by the Narodni Galerie in Prague, Czech Republic.

30. The painting *Farm Garden with Sunflowers (1908) (W190)* again is too flowery to be called a meadow. It had been owned by Henriette Wittgenstein and sold to the Austrian Gallery in 1939.

31. The painting *Roses under Trees (1904) (W175),* although part of the Zuckerkandl family collection, is similarly dominated by a large tree and three rose bushes, and had never been referred to as simply a "blooming meadow." The painting was apparently purchased by Philip Häusler from Amalie's niece, Nora Stiassny (the daughter of Otto and Amalie) who was deported with her mother to Theresienstadt and murdered at Auschwitz. Although the painting's provenance is problematic, *Roses under Trees*, presently in the Musée d'Orsay in Paris, France, does not appear to have been in the possession of Amalie.

32. Other paintings dominated by flowery gardens, such as *Orchard with Roses (1912) (W211)* or *Italian Garden Landscape (1913) (W215)*, also were not technically

"meadow" paintings and had established provenances that excluded them from consideration.

33. The only painting that matched the description and was without an established pre-WWII provenance was *Blooming Meadow (1904/05) (W176)*. But up until that time, the identity of the owner of the painting had never been publicly revealed in the Klimt literature.

34. Using the Internet, on May 30, 2003, Jorisch's lawyer Schoenberg found information from the website of the Canadian parliament that stated that Lauder had loaned Klimt's *Blooming Meadow (1904/05) (W176)* for the 2001 exhibition at the National Gallery in Ottawa, Canada. The museum had applied to the parliament for immunity from seizure for the loaned paintings and had disclosed in its application Lauder's name.

35. In June 2003, Schoenberg contacted Lauder and requested provenance information concerning the *Blooming Meadow* painting in his possession. Thereafter, Schoenberg shared documents and information with Lauder's counsel in an attempt to determine the correct provenance of the painting.

36. At the time that Jorisch discovered that Lauder was in possession of the *Blooming Meadow (1904/05) (W176)* very little was known about the provenance of Lauder's painting. However, over the next several years, Jorisch was able to piece together documentation concerning the Painting that established conclusively that it was the painting owned by Jorisch's grandmother, Amalie.

EVIDENCE

37. Because the painting *Blooming Meadow (1904/05) (W176)* has no distinguishing features – it depicts a grassy field with flowers and several trees – it was not possible for Jorisch to make a positive identification of it as the painting he had last seen in his home in 1939, when he was just ten years old. Indeed, as described above, Klimt painted a number of scenes similar to the *Blooming Meadow*. Without knowing more, Jorisch could not be certain that Lauder's painting was the one taken from Amalie.

38. However, by obtaining further provenance information about the *Blooming Meadow* in Lauder's possession and several other similar paintings, it became possible to identify Lauder's *Blooming Meadow* as the one once owned by Amalie.

39. The Zuckerkandl family owned a large number of works by Gustav Klimt. The connection to Klimt was probably first made by Emil Zuckerkandl's wife Bertha (Jorisch's great-aunt), the daughter of an influential newspaper publisher in Vienna and herself an important journalist and advocate for Klimt.

40. The principle collectors were Bertha's in-laws the industrialist Victor Zuckerkandl ("Victor") and his wife Paula. Besides the *Blooming Meadow (1904/05) (W176)*, no fewer than ten other Klimt paintings were purchased by Victor and Paula Zuckerkandl: *Pallas Athena (1898) (W127)*; *Roses under Trees (1904) (W175)*; *Poppy Field (1907) (W182)*; *Portrait of Paula Zuckerkandl (1912) (W209)*; *Avenue in Schloss Kammer Park (1912) (W212)*; *Malcesine on Lake Garda (1913) (W216)*; *Church in Cassone (1913) (W217)*; *Forester's House in Weissenbach (1914) (W220)*; *Litzlberg on*