51. In 1938, Amalie was forced to file a declaration listing all of her assets, as a prelude for discriminatory taxes levied by the Nazis against Jews. However, the declaration she submitted does not describe any of her artworks.

52. The Sanatorium property in Purkersdorf, including Amalie's villa, was aryanized in 1938 by the Austrian Kontrollbank. Amalie's share of the Sanatorium and villa was sold to Nazi-party member Hans Gnad in August 1939. The proceeds of the sale were not given to Amalie, but were subject to confiscatory, discriminatory taxes or placed in frozen accounts. Amalie and her daughter were only allowed to live in the laundry room of her villa. Later, they were forced to move to a collective home. From there, they were deported from Vienna to Lodz, Poland on October 23, 1941, and never heard from again. Amalie may have died during the transport, as she was diabetic and was probably not permitted to take her medicine. It is also possible that she died in Lodz, or was deported from there to one of the various Nazi death camps, such as Chelmno, where many Jews from Lodz were murdered.

53. When Louis returned to Vienna after the war, he attempted to locate the belongings of his mother-in-law, Amalie. He was told by the storage company, Dworak, that all of her belongings had been packed up in October 1941 and put in storage. The company said that after the war had ended, the boxes were looted by the Russians and that no inventory remained.

54. On September 22, 1947, Louis's lawyer, Dr. Fritz Neubauer ("Dr. Neubauer"), wrote to the Austrian government agency concerning the search for

14

Amalie's paintings. In his letter, he described three paintings by Gustav Klimt that were missing. One, described as a landscape of Lake Garda with a church whose tower was cut off, was clearly *Church in Cassone*. He then described "two flowery meadows," counterparts to each other.

55. On August 10, 1948, the Austrian government agency wrote to the Dorotheum auction house inquiring about the missing paintings, describing them as Dr. Neubauer had in his letter.

56. Unfortunately, Louis died in 1949 before any of Amalie's artworks could be located or recovered.

57. A subsequent search list of artworks still missing from Austrian collections was sent to the German government. The list also described the three Klimt paintings missing from Amalie's collection, including the two "flowery meadow" paintings.

58. In 1956, the Austrian-Jewish author Alexander Grünberg, who had survived the war in the Perchtoldsdorf suburb of Vienna, compiled the first attempt at a catalogue of paintings by Gustav Klimt and published it inside the second edition of Emil Pirchan's Klimt monograph, published by Bergland Verlag in Vienna. Grünberg's catalogue includes an entry for *Flowery Meadow* attributed to "Estate of Amalie Redlich." The book did not include a reproduction of the Painting. Gruenberg's catalogue also includes a number of other paintings attributed to the Zuckerkandl family, including *Poppy* (Zuckerkandl); *Roses under Trees* (Zuckerkandl estate); *Poppy Field*

15

(Zuckerkandl estate, Vienna); *Unterach on Attersee* (Zuckerkandl estate, Vienna); *Church in Cassone* (Zuckerkandl estate).

59.  Around 1960, Johannes Dobai ("Dobai") compiled a new Klimt catalogue as part of his doctoral dissertation. In his dissertation, he identifies number "292 *Flowery Meadow*, Estate of Amalie Redlich," a work he suggests was exhibited in 1910 in Venice in the Klimt Room as number 28 under the title "Prato Florido."

60.  Dobai adds a note to his entry "Pirchan identifies in his list a picture *Flowery Meadow* in the estate of Amalie Redlich. The heir of Mrs. Redlich, Mrs. Elisabeth Glanville, does not remember such a painting, which might be identical to *A Summer Day*, number 291."

61.  Dobai made a mistake. Elisabeth Glanville was not the heir of Jorisch's grandmother, Amalie Redlich. She was in fact the descendant of a completely different Redlich family, who had owned Klimt's *Church at Unterach on the Attersee* (1915/16) (W225). Dobai had made a mistake, and this led him to remove the attribution to Amalie in his subsequent work.

62.  Dobai reworked his dissertation into a new Klimt catalogue. In his draft for publication, he describes 148 *Garden Landscape (~~Flowery~~ Blooming Meadow)*. The exhibition history matches number 292 in Dobai's dissertation (with reference to the exhibit in Venice), and in the notes Dobai concludes that it is similar, but not identical to *A Summer Day*.

63. Dobai's catalogue was published in 1967 with a small, black and white reproduction of number 148, *Blooming Meadow*. The 1967 catalogue is the first known publication of the Painting.

64. Dobai provided a provenance for *Blooming Meadow* as "Galerie Miethke, Vienna; Galerie Schebesta, Vienna; Private Collection, Vienna." The Miethke Galerie was Klimt's gallery that handled his works during Klimt's lifetime. Galerie Schebesta was founded by Franz Schebesta in 1935. It is known for having trafficked in looted and aryanized artworks, but its owner was executed in 1945 for resistance activities. After the war, the gallery was continued by his son, Theodor Schebesta.

65. Jorisch did not see the Dobai catalogue. But because of the failure by Dobai to attribute the Painting to Amalie in his 1967 catalogue, it would not have been possible for Jorisch to identify it as the painting taken from his grandmother. In any case, by the time of the catalogue's publication, recovery of artworks in Austria was no longer possible, as Austrian restitution laws had expired.

66. Jorisch does not know who the private collector was who held the Painting in 1967, and all attempts to discover records of the Galerie Schebesta have failed.

67. The *Blooming Meadow* painting was purchased by Lauder in 1983 from the Austrian-born New York art dealer Serge Sabarsky ("Sabarsky"). Sabarsky's records, written by his assistant Renée Price (now director of the Neue Galerie in New York), state that the painting was purchased June 1983 from "Th. Steininger (?)", sold July 1983 to Lauder and transferred September 8, 1983 to Lauder's brother, Ronald Lauder.

17

68. There are no records of any export permits being issued in Austria for the Painting. An application for export permits to the Austrian federal monument agency would have been legally required before bringing the Painting from Vienna to New York. Therefore, it appears that Sabarsky smuggled the Painting out of Austria, in violation of Austrian law. This also prevented the Austrian authorities from recognizing the Painting as one sought from the collection of Amalie Redlich.

69. In October 2007, a new Klimt catalogue was published by Dr. Weidinger of Vienna, Austria. Dr. Weidinger re-inserted the provenance information erroneously deleted by Dobai. The *Blooming Meadow* painting is now understood to have been owned by Amalie Redlich.

70. Dr. Weidinger also states in his catalogue that the owner of the Painting prior to Lauder was Dr. Leopold. In the past year, Jorisch also discovered records that Dr. Leopold was associated with a Therese Steininger, who at one time exported an artwork by Alfred Kubin for an exhibition using Dr. Leopold's mailing address on her export application. As mentioned earlier, Dr. Leopold also bought the *Poppy Field* in the 1950s from Jorisch's cousin Emile Zuckerkandl. Dr. Leopold, who amassed after the war one of the largest collections of Austrian 20th century artworks, has been accused of purchasing other works with dubious provenance. See *United States v. Portrait of Wally*, 105 F.Supp.2d 288 (SDNY 2000).

71. Based on Dr. Weidinger's conclusion that the painting *Blooming Meadow* belonged to Amalie, on September 26, 2007, Jorisch demanded, through his counsel, that Lauder returns the painting.

72. Until that time, Jorisch had agreed to conduct further research to confirm the provenance of the Painting and had never made claim for delivery of the Painting. Indeed, in prior correspondence with Lauder's attorney, on April 11, 2005, Schoenberg wrote:

> We are still researching with respect to the missing Amalie Redlich family Klimt paintings. I want to confirm that we have not yet made a "demand" for a return of the painting in Mr. Lauder's collection at this time, and therefore the statute of limitation in New York should not be considered to be running in the event that we do eventually determine that a claim should be made.

73. The statute of limitations began to run on Jorisch's claim in September 2007, when Jorisch demanded return of the painting from Lauder. Under the rule set forth in *DeWeerth v. Baldinger*, 836 F.2d 103, 106 (2d Cir. 1987), "where the owner proceeds against one who innocently purchases the property in good faith, the limitations period begins to run only when the owner demands return of the property and the purchaser refuses."

74. The doctrine of laches does not bar Jorisch's claim because he has diligently and openly researched the provenance of the *Blooming Meadow* in Lauder's possession, sharing with Lauder the fruits of that research. Jorisch did not unreasonably delay by waiting for the publication of the new catalogue raisonée by Dr. Weidinger.

19

Jorisch could not have located the whereabouts of the painting much earlier than 2003. Jorisch could not have been required to make a demand for the painting until exhausting all avenues of research concerning its provenance, which research continued through 2007. Much of the evidence described above has only been located in the past several years, since 2003. Lauder has not been prejudiced by any delay, as he was notified immediately of the possibility of a claim, has conducted his own research (which failed to provide a provenance for the Painting), and has been kept apprised of Plaintiff's ongoing research into the Painting's provenance.

## COUNT I
## REPLEVIN

75. Jorisch repeats and realleges each allegation set forth in paragraphs 1 through 74 as if fully set forth herein.

76. The painting by Gustav Klimt entitled *Blooming Meadow (1904/05 (W176)* (the "Painting") is wrongfully in the possession of Lauder.

77. The Painting belonged to and was owned by Amalie Redlich of Vienna, Austria prior to 1938.

78. As a result of Nazi persecution, the Painting was confiscated in violation of international law.

79. Amalie Redlich perished in the Holocaust.

80. Georges Jorisch is the grandson and sole heir of Amalie Redlich.